**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br>257 Park Ave. S.<br>New York, NY 10010,<br><br>  Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF<br>TRANSPORTATION,<br>1200 New Jersey Avenue, SE,<br>Washington, D.C. 20590,<br><br>and<br><br>U.S. COUNCIL ON ENVIRONMENTAL<br>QUALITY,<br>730 Jackson Place, NW,<br>Washington, D.C. 20503,<br><br>  Defendants. | Civil Action No.<br><br><br><br>**COMPLAINT FOR DECLARATORY**<br>**AND INJUNCTIVE RELIEF** |

For half a century, the federal government has set motor vehicle pollution standards and fuel economy standards that have vastly improved air quality, benefited public health, and saved consumers money. Those standards are now under threat. The new presidential administration has indicated an intent to undermine, if not seek to eliminate, those standards and to terminate Clean Air Act preemption waivers that allow California to adopt clean transportation standards. These potential changes would increase health-harming and climate-destabilizing pollution from the transportation sector, leaving Americans vulnerable to significant harm from this pollution.

To bring greater transparency to the new administration's deeply harmful plans, Plaintiff Environmental Defense Fund ("EDF") submitted Freedom of Information Act ("FOIA") requests to the U.S. Department of Transportation ("DOT"), which promulgates vehicle fuel economy standards, and the U.S. Council on Environmental Quality ("CEQ"), which coordinates closely

with DOT and the U.S. Environmental Protection Agency ("EPA") on those agencies' fuel economy and motor vehicle pollution standards and programs. DOT and CEQ (together, the "Agencies") failed to produce any records or make a determination on the FOIA requests by FOIA's statutory deadline, violating EDF's rights under FOIA and depriving the public of records of clear and immediate public interest.

**INTRODUCTION**

1.      EDF files this action to enforce the statutory obligations of the Agencies under FOIA, 5 U.S.C. § 552.

2.      On January 20, 2025, President Trump signed an Executive Order titled "Unleashing American Energy" (the "Energy Executive Order") in which he directed all federal agencies, including the Agencies, to review all existing regulations, orders, guidance documents, policies, and other agency actions related to domestic energy resources, including those specifically related to vehicles. *See* Unleashing American Energy, Exec. Order 14154 § 3 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/DCPD-202500121/pdf/DCPD-202500121.pdf.

3.      The Energy Executive Order states that the new administration's policy is to "eliminate" what it refers to as an "electric vehicle (EV) mandate." *Id.* § 2(e). Further, the Energy Executive Order directs agencies to, within 30 days, "develop and begin implementing action plans to suspend, revise, or rescind all agency actions identified as unduly burdensome" to domestic energy resources "as expeditiously as possible." *Id.* § 3(b).

4.      In another Day One Executive Order, titled "Initial Rescissions of Harmful Executive Orders and Actions" (the "Rescissions Executive Order"), the President revoked a number of executive actions taken by the prior administration, including Executive Orders related to climate change, clean energy, and spurring the production of zero-emission vehicles.

*See* Initial Rescissions of Harmful Executive Orders and Actions, Exec. Order 14148 § 2 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-28/pdf/2025-01901.pdf.

5.    On January 28, 2025, in response to the Energy and Recissions Executive Orders, Secretary of Transportation Sean Duffy sent a memorandum directing the National Highway Traffic Safety Administration ("NHTSA"), within DOT, to "commence an immediate review and reconsideration of all existing fuel economy standards applicable to all models of motor vehicles produced from model year 2022 forward."  Memorandum from the Secretary, U.S. Dep't of Transp., to Office of Adm'r of NHTSA et al. 3 (Jan. 28, 2025), https://www.transportation.gov/sites/dot.gov/files/2025-01/Signed%20Secretarial%20Memo%20re%20Fixing%20the%20CAFE%20Program.pdf.

6.    Among the standards targeted by the Secretary for reconsideration based on the Energy Executive Order are NHTSA's Corporate Average Fuel Economy ("CAFE") standards for cars and light trucks starting in model year 2027 and fuel efficiency standards for heavy-duty trucks and vans starting in model year 2030. *See id.*; Corporate Average Fuel Economy Standards for Passenger Cars and Light Trucks for Model Years 2027 and Beyond and Fuel Efficiency Standards for Heavy-Duty Pickup Trucks and Vans for Model Years 2030 and Beyond, 89 Fed. Reg. 52,540 (June 24, 2024). These standards will improve the energy efficiency of motor vehicles and provide Americans with more choices for purchasing energy efficient vehicles.

7.    Additional agency actions potentially targeted pursuant to the Energy Executive Order include EPA's light- and medium- duty vehicle pollution reduction standards and heavy-duty engine and vehicle pollution reduction standards. *See, e.g.*, Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles, 89 Fed. Reg.

27,842 (Apr. 18, 2024); Control of Air Pollution From New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4,296 (Jan. 24, 2023); Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3, 89 Fed. Reg. 29,440 (Apr. 22, 2024).

8.     DOT worked with EPA during its finalization of those standards, which provide substantial reductions in climate pollution and crucial benefits to air quality and public health. *See* NHTSA Press Release: USDOT Finalizes New Fuel Economy Standards for Model Years 2027-2031 (June 7, 2024), https://www.nhtsa.gov/press-releases/new-fuel-economy-standards-model-years-2027-2031.

9.     CEQ is charged with implementing the National Environmental Policy Act, through which DOT was directed to assess the impacts of the above-referenced standards and issue an Environmental Impact Statement.

10.     The Energy Executive Order also calls for "terminating, where appropriate, state emissions waivers" related to vehicle standards. Energy Exec. Order § 2(e). These "state emissions waivers" are statutorily authorized waivers of Clean Air Act preemption for California programs that reduce air pollution from vehicles, thereby allowing California to adopt clean transportation standards that are more protective than federal standards. *See* 42 U.S.C. § 7543(b)(1). The Clean Air Act provides other states and the District of Columbia the option to adopt California's more protective standards to reduce air pollution in their jurisdictions. *Id.* § 7507. Sixteen states and the District of Columbia have exercised this authority to adopt some or all of California's vehicle emissions standards.

11.     On January 24, 2025, EPA moved to hold litigation concerning one such waiver in abeyance, stating that the new administration has decided to reassess the basis for EPA's prior

reinstatement of the waiver. EPA's motion demonstrates an intent to reassess and potentially seek to invalidate the waiver.

12.    Additionally, on March 12, 2025, EPA Administrator Lee Zeldin announced plans to reconsider EPA's light- and medium- duty vehicle pollution reduction standards and heavy-duty vehicle pollution reduction standards. EPA, *EPA Announces Action to Implement POTUS's Termination of Biden-Harris Electric Vehicle Mandate* (Mar. 12, 2025), https://www.epa.gov/newsreleases/epa-announces-action-implement-potuss-termination-biden-harris-electric-vehicle.

13.    Any action to weaken or eliminate NHTSA's fuel economy and fuel efficiency standards and EPA's vehicle pollution reduction standards and programs will result in significant emissions of harmful climate and air pollution from the transportation sector, increase costs to consumers, and perpetuate the country's dependence on oil.

14.    Specifically, according to NHTSA, through 2050, the fuel economy and fuel efficiency standards "will save consumers nearly $23 billion in fuel costs and avoid the consumption of about 70 billion gallons of gasoline (equivalent)," as well as "prevent more than 710 million metric tons of carbon dioxide emissions." NHTSA, *June 7, 2024: NHTSA Announces Final Rule for CAFE and HDPUV Standards* (June 2024), https://www.nhtsa.gov/laws-regulations/corporate-average-fuel-economy.

15.    According to EPA, its light- and medium-duty vehicle emissions standards alone are expected to "avoid more than 7 billion tons of carbon emissions and provide nearly $100 billion of annual net benefits to society, including $13 billion of annual public health benefits due to improved air quality, and $62 billion in reduced annual fuel costs, and maintenance and repair costs for drivers." EPA, *What They Are Saying: Strongest ever pollution standards for*

*cars will reduce pollution, create jobs, cut costs, and ensure companies and workers lead the clean vehicle future* (Mar. 20, 2024), https://www.epa.gov/newsreleases/what-they-are-saying-strongest-ever-pollution-standards-cars-will-reduce-pollution.

16.     EPA estimates that its heavy-duty GHG emissions standards will avoid an additional approximately 1 billion metric tons of GHG emissions and produce $13 billion in annualized net benefits. EPA, *Regulatory Announcement: Final Standards to Reduce Greenhouse Gas Emissions from Heavy-Duty Vehicles for Model Year 2027 and Beyond* (Mar. 2024), https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P101A93K.pdf.

17.     Rolling back or rescinding NHTSA's and EPA's standards would impair these projected avoided air pollution emissions and the resulting benefits.

### *DOT FOIA Request*

18.     On January 31, 2025, EDF submitted a FOIA request to DOT ("DOT FOIA Request") seeking correspondence and records of DOT transition team members and political appointees related to changes to Clean Air Act or Energy Policy and Conservation Act vehicle pollution reduction or fuel economy programs. *See* Ex. A at 2-4 (Letter from Erin Murphy, EDF, to National Freedom of Information Officer, DOT). EDF noted that its request for DOT records included a request for NHTSA records. *Id.* at 2.

19.     That same day, January 31, EDF received a letter from DOT acknowledging receipt of the DOT FOIA Request. Ex. B (Letter from Darlene Wallace, DOT, to Erin Murphy, EDF).

20.     Under FOIA, DOT had 20 working days—until March 3, 2025—to make a determination on the DOT FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i); *see also* 49 C.F.R. §7.31(a)(2).

21.     To date, EDF has not received DOT's determination on the DOT FOIA Request and has not received any requested records, in violation of FOIA's statutory deadline and requirements.

### *CEQ FOIA Request*

22.     On February 3, 2025, EDF submitted a FOIA request ("CEQ FOIA Request") to CEQ seeking correspondence and records of CEQ transition team members and political appointees related to changes to Clean Air Act or Energy Policy and Conservation Act vehicle pollution reduction or fuel economy programs. *See* Ex. C at 1-3 (Email from Erin Murphy, EDF, to National Freedom of Information Officer, CEQ).

23.     On February 13, 2025, EDF received an email from CEQ acknowledging receipt of the CEQ FOIA Request. Ex. D (Email from Hector Vazquez, CEQ, to Erin Murphy, EDF).

24.     Under FOIA, EPA had 20 working days to make a determination on the CEQ FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 1515.6(a) (2024).[1] CEQ's February 13 email did not state the date on which it received the CEQ FOIA Request. However, even if CEQ did not receive the request until February 13, 2025, over a week after EDF sent the request, its statutory deadline to make a determination on the CEQ FOIA Request lapsed on March 14, 2025.

25.     To date, EDF has not received CEQ's determination on the CEQ FOIA Request or any requested records, in violation of the statutory deadlines and other requirements of FOIA.

---

[1] CEQ revised its FOIA regulations in early 2025, with the revisions effective February 20, 2025. 90 Fed. Reg. 6828, 6828 (Jan. 21, 2025). EDF submitted the CEQ FOIA Request prior to that date and accordingly cites to the 2024 version of the CEQ FOIA regulations in this complaint.

### *Importance of the FOIA Requests*

26.    The public, including EDF and its members, has a strong interest in any records related to the current administration's actions to weaken or eliminate vehicle pollution reduction or fuel economy programs and standards. These programs and standards achieve substantial reductions in climate- and health-harming pollution and save consumers money, yet the current administration has made it a policy priority to undermine them.

27.    Knowledge of the extent and nature of communications between certain DOT and CEQ transition team members, political appointees, and external stakeholders is critical for EDF, its members, and the public to understand DOT and CEQ actions relating to the future of federal vehicle pollution reduction and fuel economy programs and standards, and will shed light on DOT's and CEQ's interactions with a range of stakeholders, including industry groups. EDF submitted FOIA requests to the Agencies to bring transparency to these records.

28.    EDF requested the information in order to disseminate it to EDF's members, supporters, and the general public. EDF also plans to use its expertise to analyze the records and help the public understand their significance.

29.    The Agencies are unlawfully withholding and unreasonably delaying the release of records requested by EDF and to which EDF is lawfully entitled under FOIA, despite the records' clear salience to current agency actions with grave implications for public health and welfare.

30.    EDF seeks declaratory and injunctive relief declaring that DOT and CEQ have violated FOIA and an order compelling the Agencies to promptly release all requested records.

## JURISDICTION AND VENUE

31.    This Court has jurisdiction over this action pursuant to FOIA, which vests jurisdiction in the U.S. District Court for the District of Columbia. 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, a federal statute.

32.    Injunctive relief is appropriate under FOIA. 5 U.S.C. § 552(a)(4)(B). Declaratory relief is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

33.    Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

34.    Plaintiff EDF is a 501(c)(3) non-profit environmental organization dedicated to finding practical solutions to critical environmental problems through the use of law, policy, science, and economics. EDF has offices throughout the United States, including in the District of Columbia.

35.    EDF engages in extensive, daily efforts to inform the public about matters affecting environmental and energy policy, including about vehicles and transportation. EDF has multiple channels for distributing information to the public, including through direct communication with its more than three million members and supporters, press releases, blog posts, and active engagement on social media. EDF is frequently called upon to share its expertise on important environmental issues in the media and in other public forums.

36.    EDF has long advocated for measures to protect communities from the deleterious effects of air pollution and climate change. EDF advocated for and supported protective vehicle pollution reduction and fuel economy standards and programs—standards and programs that are

now under threat from the Energy Executive Order. These standards and programs significantly reduce greenhouse gas and other harmful air pollution emissions from light-, medium-, and heavy-duty vehicles.

37.    EDF is injured by the Agencies' failure to timely produce public records that were properly requested and to which EDF is entitled under FOIA. *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617-18 (D.C. Cir. 2006) ("The requester is injured-in-fact for standing purposes because he does not get what the statute entitles him to receive.").

38.    Defendant DOT is an executive department of the United States and is therefore an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and subject to FOIA. DOT has possession and control of the requested records and is responsible for fulfilling the DOT FOIA Request.

39.    Defendant CEQ is an establishment in the executive branch of the United States government and is therefore an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and subject to FOIA. CEQ has possession and control of the requested records and is responsible for fulfilling the CEQ FOIA Request.

## LEGAL BACKGROUND

40.    FOIA requires a federal agency to make public records "promptly available"— subject to enumerated exemptions—to any person who makes a request that reasonably describes the records sought and complies with the agency's rules for making such a request. 5 U.S.C. § 552(a)(3)(A).

41.    FOIA requires the agency to issue a determination on a FOIA request within 20 working days from the date of receipt. *Id*. § 552(a)(6)(A)(i).

42.    The agency's determination on a FOIA request shall contain (1) the agency's determination of whether to comply with the request and provide responsive records, (2) the reasons for the agency's determination, and (3) notice of the right of the requester to appeal an adverse determination to the head of the agency. 5 U.S.C. § 552(a)(6)(A)(i).

43.    Mere notice of the agency's receipt of the request does not suffice for a "determination," nor is it enough that "within the relevant time period, the agency simply decide to later decide." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013). Instead, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*

44.    A FOIA requester may seek "expedited processing" of a request for records, and a determination on a request for expedited processing must be made, and notice of that determination provided to the requester, within 10 days of the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(II).

45.    FOIA allows the agency to extend the 20-working-day deadline by up to 10 additional working days for "unusual circumstances" by providing written notice to the requester that describes the "unusual circumstances" and provides the date on which the determination is expected to be issued. *Id.* § 552(a)(6)(B)(i).

46.    If the agency fails to comply with FOIA's statutory deadline for issuing a determination on a request, the requester is deemed to have exhausted its administrative remedies and may file suit against the agency. *Id.* § 552(a)(6)(C)(i).

47.    Under FOIA, an agency shall waive or reduce fees and costs incurred in responding to a FOIA request "if disclosure of the information is in the public interest because it

is likely to contribute significantly to public understanding of the operation or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

48.    This Court interprets FOIA's fee waiver provision to require that an agency's determination on a request for a fee waiver be made within the 20-working-day period. *Pub Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 4 (D.D.C. 2003) ("[I]f the agency fails to respond to a waiver request within 20 days, the requester is deemed to have constructively exhausted administrative remedies and may seek judicial review.").

49.    The agency bears the burden to prove the legality of its actions under FOIA. 5 U.S.C. § 552(a)(4)(B).

50.    FOIA grants jurisdiction to the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*.

51.    Under FOIA, this Court may assess attorney fees and costs against the United States if EDF substantially prevails in this action. *Id*. § 552(a)(4)(E).

## FACTUAL BACKGROUND

### A.  NHTSA Fuel Economy and Fuel Efficiency Standards

52.    On June 24, 2024, NHTSA adopted fuel economy standards for cars and light trucks starting in model year 2027 and fuel efficiency standards for heavy-duty trucks and vans starting model year 2030. *See* Corporate Average Fuel Economy Standards for Passenger Cars and Light Trucks for Model Years 2027 and Beyond and Fuel Efficiency Standards for Heavy-Duty Pickup Trucks and Vans for Model Years 2030 and Beyond, 89 Fed. Reg. at 52,540. These standards are a continuation of NHTSA's congressionally directed efforts since 1975 to promote the conservation of energy supplies and improve the energy efficiency of motor vehicles, providing

Americans with more choices for purchasing energy efficient vehicles. Further, by increasing fuel economy in the targeted vehicle classes, these standards help reduce harmful emissions, protecting the public from the detrimental health effects of air pollution.

53. Despite NHTSA's finalization of these standards, and the public's reliance on these actions, the Energy Executive Order indicates that the White House seeks to undermine them, and Secretary Duffy's January 28 memorandum demonstrates that efforts to do so are underway.

## B. Clean Air Act Preemption Waivers

54. The Clean Air Act preempts states from adopting standards "relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). Since its enactment, the Clean Air Act has also included a waiver provision that allows California to adopt new motor vehicle emissions standards that are more protective than federal standards, allowing the state to protect Californians from air pollution from new cars and trucks. *See* 42 U.S.C. § 7543(b)(1) (directing that EPA "shall," subject to limited conditions, "waive application of" the prohibition on States and localities from enforcing their own emissions standards for new motor vehicles with respect to California, which had vehicle emissions standards in place prior to 1966). For more than half a century, EPA has granted preemption waivers for various vehicle emissions standards promulgated by California that are

more protective than federal standards, including: (1) Advanced Clean Cars I;[2] (2) Advanced

Clean Trucks;[3] (3) Advanced Clean Cars II;[4] and (4) Omnibus Low NOx Regulations.[5]

55.     The Clean Air Act also authorizes other states and the District of Columbia to

adopt California's more protective vehicle emissions standards to reduce air pollution in their

jurisdictions. 42 U.S.C. § 7507. Sixteen states—Colorado, Connecticut, Delaware, Maine,

Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon,

Pennsylvania, Rhode Island, Vermont, Virginia, and Washington—and the District of Columbia

have adopted all or some of California's vehicle emissions standards under this authority.

56.     Despite the longstanding and time-tested nature of these authorities, and states'

and the public's reliance on the substantial health protections they confer, the Energy Executive

Order indicates that the White House intends to "terminate" the waivers.

57.     In a January 24, 2025 motion to hold litigation concerning the Advanced Clean

Cars I waiver in abeyance, EPA stated: "After the change in Administration, EPA's Acting

Administrator has determined that the agency should reassess the basis for and soundness of the

---

[2] California State Motor Vehicle Pollution Control Standards; Notice of Decision Granting a Waiver of Clean Air Act Preemption for California's Advanced Clean Car Program and Within the Scope Confirmation for California's Zero Emission Vehicle Amendments for 2017 and Earlier Models, 78 Fed. Reg. 2,112 (Jan. 9, 2013); California State Motor Vehicle Pollution Control Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption; Notice of Decision, 87 Fed. Reg. 14,332 (Mar. 14, 2022).

[3] California State Motor Vehicle and Engine Pollution Control Standards; Heavy-Duty Vehicle and Engine Emission Warranty and Maintenance Provisions; Advanced Clean Trucks; Zero Emission Airport Shuttle; Zero-Emission Power Train Certification; Waiver of Preemption; Notice of Decision, 88 Fed. Reg. 20,688 (Apr. 6, 2023).

[4] California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 642 (Jan. 6, 2025).

[5] California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low $NO_X$ Regulation; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 643 (Jan. 6, 2025).

2022 reinstatement decision." Mot. of Fed. Respondents to Hold Briefing Schedule in Abeyance

at 3, *Diamond Alt. Energy v. EPA*, No. 24-7 (U.S. Jan. 24, 2025),

https://www.supremecourt.gov/DocketPDF/24/24-7/340121/20250124143604732_24-

7%20Diamond%20Abeyance%20Mot_f.pdf.

58.     EPA's motion demonstrates an intent to reassess and potentially seek to invalidate

the waivers.

**C.  Light- and Medium-Duty Vehicle Multi-Pollutant Standards**

59.     On April 18, 2024, EPA finalized standards to reduce greenhouse gases and other

harmful air pollutants for model year 2027-2032 light- and medium-duty vehicles. *See* Multi-

Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty

Vehicles, 89 Fed. Reg. 27,842. These standards are a continuation of EPA's congressionally

directed efforts over more than 50 years to set motor vehicle emissions standards to protect the

public from the effects of harmful air pollution, including efforts since 2010 to reduce harmful

climate pollution.

60.     Despite EPA's finalization of these standards, and the public's reliance on this

action, the Energy Executive Order indicates that the White House seeks to undermine them, and

EPA Administrator Zeldin's March 12 announcement demonstrates that efforts to do so are

underway.

**D.  Heavy-Duty Vehicle NOX Pollution and Greenhouse Gas Reduction Standards**

61.     EPA has also adopted motor vehicle pollution reduction standards to reduce

pollution from heavy-duty vehicles. On January 24, 2023, EPA finalized emissions standards to

reduce nitrogen oxide ("NO$_X$") emissions from heavy-duty vehicles and engines starting in

model year 2027. *See* Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine

and Vehicle Standards, 88 Fed. Reg. 4,296. On April 22, 2024, EPA finalized greenhouse gas emissions standards for heavy-duty vehicles for model year 2027 and later. *See* Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3, 89 Fed. Reg. 29,440. Like EPA's light- and medium-duty pollution reduction standards, these standards continue decades of EPA's efforts to protect the public from the effects of harmful air pollution, including efforts to reduce climate pollution.

62.     Despite EPA's finalization of these standards, and the public's reliance on these actions, the Energy Executive Order indicates that the White House seeks to undermine them, and EPA Administrator Zeldin's March 12 announcement demonstrates that efforts to do so are underway.

**E. EDF's FOIA Request to DOT Regarding Vehicle Pollution Reduction and Fuel Economy Standards (Request No. OST-2025-1096)**

63.     On January 31, 2025, EDF submitted the DOT FOIA request to DOT seeking: (i) all correspondence and records with or between twelve DOT transition team members and political appointees containing twenty-five specific search terms related to changes to Clean Air Act or Energy Policy and Conservation Act vehicle pollution reduction or fuel economy programs; and (ii) all correspondence between any of those twelve individuals and any external, non-governmental stakeholders (including but not limited to seven specific industry stakeholders) containing those same search terms. *See* Ex. A at 2-4. EDF noted that its request for DOT records included a request for NHTSA records. *Id.* at 2.

64.     Given the new administration's fast-moving efforts to weaken EPA's vehicle pollution reduction standards and programs and NHTSA's fuel economy and fuel efficiency standards, the significant public impacts anticipated if those efforts are successful, and EDF's strong interest in understanding and publicly sharing the basis for any such changes, EDF

requested expedited processing of the DOT FOIA Request. *Id.* at 4-10; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 49 C.F.R. §7.31(c).

65.    EDF also requested a waiver of fees associated with the DOT FOIA Request. Ex. A at 10-12; *see also* 49 C.F.R. §§ 7.24(b), 7.43(c).

66.    On January 31, 2025, the same day EDF submitted the DOT FOIA Request, EDF received a letter from DOT acknowledging receipt of the request. Ex. B.

67.    On February 26, 2025, EDF received a letter from DOT denying EDF's request for expedited processing. Ex. E at 2 (Letter from Michael Bell, DOT, to Erin Murphy, EDF).

68.    Neither the January 31 DOT letter nor the February 26 DOT letter addressed EDF's request for a fee waiver. Exs. B, E.

69.    The deadline for a determination on EDF's request for a fee waiver lapsed 20 workdays after receipt of the DOT FOIA Request, on March 3, 2025. *See Pub. Citizen, Inc.*, 292 F. Supp. 2d at 4.

70.    The January 31 and February 26 DOT letters did not inform EDF of the scope of the documents the agency will produce or the scope of the documents the agency plans to withhold under any FOIA exemptions. *See* Exs. B, E.

71.    The January 31 and February 26 DOT letters were not DOT's determination on the DOT FOIA Request.

72.    The January 31 and February 26 DOT letters did not extend DOT's deadline for issuing a determination on the DOT FOIA Request.

73.    As of the date of filing this complaint, the DOT FOIA Public Access Link (PAL) website identifies the status of the DOT FOIA Request as "Assigned for Processing" and does not provide any estimated completion date.

74.    DOT did not provide a determination on the DOT FOIA Request within the 20-working-day deadline, which lapsed on March 3, 2025. *See* 5 U.S.C. § 552(a)(6)(A)(i); *see also* 49 C.F.R. §7.31(a)(2).

75.    DOT did not provide notice to EDF that it was extending the 20-working-day deadline. *See* 5 U.S.C. § 552(a)(6)(B)(i); 49 C.F.R. § 7.34.

76.    To date, DOT has not issued a determination on the DOT FOIA Request.

77.    To date, DOT has not produced any records in response to the DOT FOIA Request.

78.    To date, DOT has not issued a determination on EDF's request for a fee waiver.

79.    DOT's participation in the evaluation of vehicle pollution reduction and fuel economy and efficiency standards and programs as directed by the Energy and Rescission Executive Orders and Secretary Duffy's memorandum is ongoing.

80.    DOT's failure to respond to the DOT FOIA Request within the required timeframe has prevented EDF, its members, and the general public from being fully informed and able to meaningfully engage on this issue.

### F. EDF's FOIA Request to CEQ Regarding Vehicle Pollution Reduction and Fuel Economy Standards (Request No. FY2025-239)

81.    On February 3, 2025, EDF submitted the CEQ FOIA Request to CEQ seeking: (i) all correspondence and records with or between any CEQ transition team members and political appointees containing twenty-two specific search terms related to changes to Clean Air Act or Energy Policy and Conservation Act vehicle pollution reduction or fuel economy programs; and (ii) all correspondence between any CEQ transition team members and political appointees and any external, non-governmental stakeholders (including but not limited to seven

18

specific industry stakeholders and their representatives) containing those same search terms. *See* Ex. C at 1-3.

82.     Given the new administration's fast-moving efforts to weaken EPA's vehicle pollution reduction standards and programs and NHTSA's fuel economy and fuel efficiency standards, the significant public impacts anticipated if those efforts are successful, and EDF's strong interest in understanding and publicly sharing the basis for any such changes, EDF requested expedited processing of the CEQ FOIA Request. *Id.* at 3-8; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 1515.7(a) (2024).

83.     EDF also requested a waiver of fees associated with the CEQ FOIA Request. Ex. C at 8-9; *see also* 40 C.F.R. § 1515.15(b) (2024).

84.     On February 13, 2025, EDF received an email from CEQ acknowledging receipt of the CEQ FOIA Request, though the email did not provide a date of receipt. The EDF email denied EDF's request for expedited processing and delayed making a fee waiver determination to a later time. Ex. D.

85.     On March 12, 2025, EDF received an email from CEQ requesting that EDF "provide a date range" for the FOIA request. Ex. F (Excerpt of email exchange between Hector Vazquez, CEQ, and Erin Murphy, EDF).

86.     EDF responded that same day, reiterating the date range originally provided in the February 3 FOIA Request. *Id.*

87.     The February 13 and March 12 CEQ emails did not inform EDF of the scope of the documents the agency will produce or the scope of the documents the agency plans to withhold under any FOIA exemptions. *See* Exs. D, F.

88.    The February 13 and March 12 CEQ emails were not CEQ's determination on the CEQ FOIA Request.

89.    The February 13 and March 12 CEQ emails did not extend CEQ's deadline for issuing a determination on the CEQ FOIA Request.

90.    On April 2, 2025, EDF called one of the contact phone numbers provided in the February 13 email. Erin Murphy, EDF, spoke with Howard Sun, CEQ, who conveyed that the agency is still in the process of searching for responsive records, and was not able to provide an estimated completion date, though Mr. Sun mentioned that his colleague may provide more information. On April 3, 2025, Hector Vazquez, CEQ, called Erin Murphy, EDF, about the status of the CEQ FOIA Request and similarly stated that the search for records is underway but he could not provide an estimated completion date.

91.    Under FOIA, CEQ had 20 working days to make a determination on the FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 1515.6(a) (2024). CEQ's February 13 and March 12 emails did not state the date on which it received the CEQ FOIA Request. However, even if CEQ did not receive the request until February 13, 2025, ten days after EDF sent the request, its statutory deadline to make a determination on the CEQ FOIA Request lapsed on March 14, 2025.

92.    CEQ did not provide EDF with written notice that it was extending that deadline. *See* 5 U.S.C. § 552(a)(6)(B)(i); 40 C.F.R. § 1515.9 (2024).

93.    To date, CEQ has not issued a determination on the CEQ FOIA Request.

94.    To date, CEQ has not produced any records in response to the CEQ FOIA Request.

95.    CEQ's participation in the evaluation of vehicle pollution reduction and fuel economy and efficiency standards and programs as directed by the Energy Executive Order is ongoing.

96.    CEQ's failure to respond to the CEQ FOIA Request within the required timeframe has prevented EDF, its members, and the general public from being fully informed and able to meaningfully engage on this issue.

**CLAIM FOR RELIEF**

**COUNT I: VIOLATION OF THE FREEDOM OF INFORMATION ACT**
**Department of Transportation**

97.    EDF incorporates by reference all preceding paragraphs.

98.    Under FOIA, EDF has a statutory right to have DOT process the DOT FOIA Request in a timely manner.

99.    Under FOIA, EDF has a statutory right to obtain all non-exempt records responsive to the DOT FOIA Request.

100.    DOT failed to comply with the statutory deadline for issuing a determination on the DOT FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

101.    DOT failed to make a determination on the DOT FOIA Request from which EDF could exercise its statutory right of appeal. *See id*.

102.    DOT failed to provide a date on which it would complete action on the DOT FOIA Request. *See id.* § 552(a)(7)(B)(ii).

103.    DOT failed to timely produce all non-exempt records responsive to the DOT FOIA Request. *See id.* § 552(a)(3)(A).

104.    DOT failed to comply with the legal requirement to make a determination on EDF's request for a fee waiver. *See Pub. Citizen, Inc.*, 292 F. Supp. 2d at 4.

105.    Unless enjoined by this Court, DOT will continue to violate EDF's legal rights to timely receive a complete set of responsive documents sought through its DOT FOIA Request.

106.    It is in the public interest for the Court to issue an injunction requiring DOT's immediate compliance with FOIA.

### COUNT II: VIOLATION OF THE FREEDOM OF INFORMATION ACT
### Council on Environmental Quality

107.    EDF incorporates by reference all preceding paragraphs.

108.    Under FOIA, EDF has a statutory right to have CEQ process the CEQ FOIA Request in a timely manner.

109.    Under FOIA, EDF also has a statutory right to obtain all non-exempt records responsive to the CEQ FOIA Request.

110.    CEQ failed to comply with the statutory deadline for issuing a determination on the CEQ FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

111.    CEQ failed to make a determination on the CEQ FOIA Request from which EDF could exercise its statutory right of appeal. *See id.*

112.    CEQ failed to provide a date on which it would complete action on the CEQ FOIA Request. *See id.* § 552(a)(7)(B)(ii).

113.    CEQ failed to timely produce all non-exempt records responsive to the CEQ FOIA Request. *See id.* § 552(a)(3)(A).

114.    Unless enjoined by this Court, CEQ will continue to violate EDF's legal rights to timely receive a complete set of responsive documents sought through the CEQ FOIA Request.

115.    It is in the public interest for the Court to issue an injunction requiring CEQ's immediate compliance with FOIA.

**REQUEST FOR RELIEF**

EDF requests the following relief from the Court:

A.  Declare unlawful the Agencies' failure to provide EDF with a determination on the DOT and CEQ FOIA Requests within FOIA's deadlines.

B.  Declare unlawful the Agencies' failure to make the requested records promptly available to EDF.

C.  Declare unlawful DOT's failure to provide EDF with a determination on its request for a fee waiver within FOIA's deadlines.

D.  Order the Agencies to provide EDF with all responsive records immediately, at no charge to EDF, and in unredacted form unless an exemption is applicable and properly asserted.

E.  Order the Agencies to provide a *Vaughn* index of any responsive records or portions of records withheld under the claim of a FOIA exemption. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

F.  Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable law.

G.  Grant any further relief as the Court deems just and proper.

Respectfully submitted on April 3, 2025.

/s/ *Samantha R. Caravello*
SAMANTHA R. CARAVELLO (Bar ID CO0080)
NATHANIEL H. HUNT (Bar ID CO0107)
Kaplan Kirsch LLP
1675 Broadway, Suite 2300
Denver, CO 80202
Telephone: (303) 825-7000
E-mail: scaravello@kaplankirsch.com
        nhunt@kaplankirsch.com

ERIN MURPHY (Bar ID D00532)*
Environmental Defense Fund
555 12th St NW, Suite 400
Washington, D.C. 20004
Telephone: (202) 572-3525
E-mail: emurphy@edf.org
*Practicing pursuant to D.C. Ct. App. Rule 49(c)(3)

*Counsel for Environmental Defense Fund*